JOHN ATKINSON *vs.* INHABITANTS OF MINOT.

Androscoggin. Opinion May 23, 1883.

*Payment. Promissory notes. Checks.*

The creditor of a town received from the treasurer a check in part payment of the debt and a negotiable note signed "T. B. Swan, treasurer of the town of Minot," for the balance. *Held*, that the note, having been taken by the creditor under a misapprehension caused by the treasurer, was not evidence of a payment *pro tanto* of the demand for which it was given and that the town was liable on the original demand to the extent of such note.

Where the money is in fact paid over to the creditor on such a debt, and re-borrowed by the treasurer on the credit of the town, and a note signed as above given therefor, the creditor cannot recover the amount of such note of the town without showing that the money was in fact appropriated to the legitimate uses of the town.

A debtor, who appropriates the funds out of which a check given by himself or his agent in payment of a debt is to be paid, and thereby causes the check to be dishonored, cannot afterwards claim that there has been a payment by means of it.

ON REPORT.

The writ was dated March 12, 1881. The case and material facts are stated in the opinion.

*George C. and Charles E. Wing*, for the plaintiff, cited: *Perkins* v. *Cady*, 111 Mass. 318; 1 Greenl. Ev. § 200; *Appleton* v. *Parker*, 15 Gray, 173; *Melledge* v. *Boston Iron Co.* 5 Cush. 158; *Fowler* v. *Ludwig*, 34 Maine, 455.

*J. M. Libby*, for the defendants, cited: *Parsons* v. *Monmouth*, 70 Maine, 262; *Bessey* v. *Unity*, 65 Maine, 342; 3 Wills, 553; 2 Dall. (Pa.) 100; 13 Serg. & R. (Pa.) 318; Washburn, C. C. 191; 2 Greenl. Ev. 467; *Garland* v. *Spencer*, 46 Maine, 528; *Tisdale* v. *Buckmore*, 33 Maine, 461.

BARROWS, J. The plaintiff declares for money had and received to his use and money by him lent and accommodated to the defendants and interest thereon, and his writ contains also special counts upon two town orders given him July 16, 1877, for $1242.50 and $120.22, respectively, by the selectmen of the town in payment for town bonds about the validity of· which there is no question.

The defendants claim that the town orders have been paid, and the burden of proof is upon them to prove payment. The orders which plaintiff produces and puts in evidence were in the possession of the town authorities, and had both been marked "paid" and "bought for sinking-fund" by the treasurer of the town. The amount once due upon them seems now to be represented in the plaintiff's hands by two notes signed "Thomas B. Swan, treasurer of the town of Minot," each for the sum of $500 payable in one year from date with interest annually at five per cent, and dated respectively November 15, and December 21, 1880, and a check dated December 21, 1880, upon the Casco National Bank in favor of the plaintiff or his order for five hundred twenty eight dollars and fifty-seven one hundredths. This action was commenced March 12, 1881.

If these documents were received by the plaintiff under such circumstances that they constitute in and of themselves a payment of the town orders declared on, or if those orders have been paid in any manner, the defence is established.

The facts attending the alleged payment appear to be as follows: the town orders in suit were presented to the town

treasurer on the day of their date and interest had been paid upon them annually. In 1880 plaintiff called on the town treasurer, Swan, for the interest, and was informed that the town had not the money but he would give him a town note on interest for the interest due, and pay it in a few months.

The note made by the treasurer was accepted by the plaintiff, and the treasurer thus ascertained that the plaintiff would receive notes given by him as town notes without scrutinizing his authority to bind the town too closely. Some time after this, the treasurer at another interview, informed the plaintiff that the town had the money in hand and wanted to pay him what they owed him, and that he would come over and pay him before long. Shortly after, he came to plaintiff's house, a number of miles from the village, and during a conversation plaintiff told him he was sorry the town was going to pay him, that they had had his money a good while, and he knew no immediate use he could make of it. Thereupon the treasurer spoke of some Oxford bonds his brother had to dispose of, and said he would see his brother and bring up the bonds and sell them to him. Upon talk about the price plaintiff told him he thought he would like to have them. The treasurer told him he would do nothing about paying him that day, and fixed a day for plaintiff to come to the village when he would be at home and would have the bonds to sell him. The day fixed seems to have been November 15, 1880. The plaintiff went to the office of the treasurer and learned that the bonds previously spoken of could not be had; and the transactions between him and the treasurer on that day must be ascertained in order to determine the rights of the parties in this suit. The treasurer, upon whose deposition, in connection with alleged corroboratory admissions of plaintiff, the defendants rely to prove payment, swears that he paid him, on the note given for interest and the other demands which he held against the town including these orders, the sum of $1529.75, $500 in money and the balance in a check on Casco National Bank, where it appears that the town had kept a deposit for some years, and then had one in the name of the treasurer of sufficient amount to cover the $1028.57 for which the check was given — that before paying him

he asked plaintiff "if he would take a check for part of it. He said that he would, but would *like to let the whole amount remain with the town of Minot*," that he does not remember whether the odd cents were paid in cash or went into the check. The treasurer's memory grows more precise as to the conversation which he says took place between him and the plaintiff after the payment, a conversation which he says resulted in his giving the plaintiff the $500 note dated November 15, and signed "Thomas B. Swan, treasurer of Minot," which he says was his own "private note," while he says nothing to indicate that he had any idea that the plaintiff so understood it. On the contrary from what he says and omits to say it is apparent that he knew that the plaintiff understood that so much of the original loan was to "*remain with the town of Minot.*" Yet if the money was in fact paid over, the plaintiff could not recover the $500, although it was re-borrowed by the treasurer upon the credit of the town, without showing that the money was in fact appropriated to the legitimate uses of the town, because the treasurer without special authority had no power to pledge the town's credit. *Bessey* v. *Unity*, 65 Maine, 342 ; *Parsons* v. *Monmouth*, 70 Maine, 262 ; *Billings* v. *Monmouth*, 72 Maine, 174.

But touching the alleged payment of $500 in cash, the plaintiff testifies positively and distinctly that it never was made. His version of the transactions at the treasurer's office November 15, is, that, after reckoning up the amount of the note and orders, the treasurer "said he wanted to pay me all except $500 ; he wanted to give me a town note for $500 and pay me the rest," that he assented — that, "after he made out this note he passed me a check on the Casco Bank of Portland ; he said the town had money deposited there ;" that plaintiff told him he "was not acquainted with checks, never handled any hardly," and that the treasurer thereupon informed him that he could get his money at any bank any time he wanted it, and, upon his further inquiry, that the check "was just as good to keep as money ;" whereupon he took the note and check. Looking at what had previously passed between the plaintiff and the treasurer, we think this the more probable statement. Of the two witnesses the plaintiff

appears to be the more credible. The treasurer is testifying to relieve those nearly·connected with him from liability on his bond, and his interest may fairly. be said to be as great as that of the plaintiff; and he is in the attitude of doing that which he certainly well knew amounted to a fraud upon the plaintiff. Without attributing intentional misrepresentation to those of the defendants' witnesses who understood from the plaintiff that the $500 was paid in money, it is obvious that their recollection is not sufficiently distinct and concurrent as to what he actually said, and their liability to misunderstand under the circumstances was so great that their testimony does not seriously shake our belief in that which comes from the plaintiff under oath; and in any event it cannot be said that there is a preponderance of evidence in favor of the cash payment of $500. If the plaintiff only said that he took a check for part of the amount of the orders, these witnesses would naturally get the idea that the remainder was paid in cash, and from that to a firm belief on their part that the plaintiff *said* so, the road is short and easy. Upon the whole we incline to the belief that what the plaintiff did receive in exchange for his·order and note on November 15, was the $500 note of that date and a check for the balance. Received as the note undoubtedly was by the plaintiff not in payment but as evidence of the town's continued indebtment to him to that amount — as to so much of the claim the case falls within the principles and presumptions referred to in *Melledge* v. *Boston Iron Co.* 5 Cush. 158; *Perkins* v. *Cady*, 111 Mass. 318; *Appleton* v. *Parker*, 15 Gray, 173; *Fowler* v. *Ludwig*, 34 Maine, 455; *Paine* v. *Dwinel*, 53 Maine, 52; *Strang* v. *Hirst*, 61 Maine, 15. The plaintiff had no intention to receive the worthless personal note of the town treasurer for $500 as payment of any portion of his demand against the town, and under the circumstances it did not operate as payment. As to this $500 the defendants' plea of payment is not sustained — whatever presumption of payment that arises from taking the treasurer's "private note" being effectually rebutted.

The remaining facts are not in dispute. A little more than a month later, the treasurer finding that the plaintiff had not drawn the money on the Casco Bank check went to him with a story that another man to whom the town owed $500 was calling for his money, and so succeeded in inducing him to exchange the check for another " private note," (which the plaintiff supposed was evidence of the town's indebtedness to him) and a treasurer's check upon the Casco Bank for $528.57. The treasurer absconded the last of January, and the town by its municipal officers forthwith took possession of the funds remaining in the Casco Bank to an amount exceeding the $528.57, and when the plaintiff presented the check on February 16, payment was refused and it was protested for non-payment. Hereupon we think that the act of the municipal officers, who are the general prudential agents of the town for the transaction of its business and control of its funds, in withdrawing the money which might otherwise have gone to pay the check for $528.57, must be regarded as defeating the payment which was attempted to be made thereby, and that the town holds the money thus withdrawn, to the amount of the check, as money had and received to the use of the plaintiff. There is no pretence that there was any express agreement to take the check absolutely as payment, and under the circumstances in which both the checks were taken, and in the absence of such agreement, the general doctrine applies as stated in Greenl's. Ev. vol. 2, § 520, p. 493, 2 ed. thus : "the check is regarded only as the means whereby the creditor may obtain payment ; or as payment *provisionally* until it has been presented and refused ; if it is dishonored it is no payment of the debt for which it was drawn." See also *Olcott* v. *Rathbone*, 5 Wend. 490 ; *Everett* v. *Collins*, 2 Campb. 515 ; *Puckford* v. *Maxwell*, 6 D. & E. 152, and other cases cited by Greenl. *ubi supra.*

The plaintiff is entitled to recover on this score then the further sum of $528.57 with interest from February 16, 1881, when the check was presented and payment refused. It operated as a provisional payment *pro tanto* until that time.

But we think that the plaintiff although he was induced by the fraud of the defendants' treasurer to take a note and lend money

to the amount of $500 on December 21, which he supposed he was lending to the town and for which he supposed the town was liable when it was not, must be regarded as having realized so much of the check first given, and that that matter stands upon the same footing as if that amount had then been received upon the check and loaned to Swan. It was not by reason of any act of the defendants or for which they are responsible that this $500 was not actually paid in money, as for aught that appears it would have been if the check had been presented on that day. This $500 then must fall within the scope of the cases first herein cited touching money procured by town officers who are not authorized to effect a loan. The plaintiff must be held to show that it was appropriated for legitimate expenses of the town and this he does not attempt. He must bear the loss as he must have borne that of the other $500 on November 15, had it then been paid to him in money and thereafter lent on the same day to the officer in whom he unwisely placed so much confidence. The $500 note of November 15, and the check of December 21, are on the files as evidence and are impounded for the benefit of whom it may concern. The $500 note of December 21, belongs to the plaintiff, but he can maintain no action on it against the town without proof that the money was actually appropriated to pay a debt of the town.

*Judgment for plaintiff for $1028.57 with interest on $500 from November 15, 1880, and on $528.57 from February 16, 1881, to the date of the rendition of judgment.*

APPLETON, C. J., DANFORTH, VIRGIN, PETERS and SYMONDS,. JJ., concurred.